Pagaduan v. Carnival Corp. et al

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of September, two thousand seventeen.

PRESENT: DENNIS JACOBS,
           JOSÉ A. CABRANES,
           RICHARD C. WESLEY,
                    <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - -X

Rodrigo R. Pagaduan,
     <u>Plaintiff-Appellant</u>,

     -v.-                    No. 16-465

Carnival Corporation, dba Carnival Cruise Lines, Carnival PLC, Melvin Babi, Doctor Doe (Ship's Doctor), Nurse Doe (Ship's Nurse),
     <u>Defendants-Appellees</u>.
- - - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:          Felix Q. Vinluan, Law Office of Felix Q. Vinluan, New York, New York.

**FOR APPELLEES:**                    Edgar R. Nield (Jeffrey B. Maltzman, Gabrielle De Santis Nield, *on the brief*), Maltzman & Partners, PA, Encinitas, California.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gleeson, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Rodrigo Pagaduan appeals from the judgment of the United States District Court for the Eastern District of New York (Gleeson, J.), granting defendants-appellees' motion to compel arbitration. We review *de novo* a district court's order to compel arbitration. Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). On appeal from an order compelling arbitration, this Court "applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Rodrigo Pagaduan ("Pagaduan") is a Filipino national who served as a motorman on the Queen Mary 2, a liner owned by defendants-appellees ("Carnival"). Pagaduan sued Carnival in the Eastern District of New York for negligence and related claims in connection with injuries sustained in

2

the course of his employment.  Carnival moved to compel Pagaduan's claims to arbitration in the Phillippines on the basis of Pagaduan's Contract of Employment.

The terms of his employment are largely dictated by a body of the Philippines government, the Philippine Overseas Employment Administration ("POEA").  The second paragraph of the Contract states that the "herein terms and conditions in accordance with POEA Governing Board Resolution No. 09 and Memorandum Circular No. 10 ... shall be strictly and faithfully observed."  J. App'x at 94.  The Memorandum Circular No. 10 implements Standard Terms and Conditions that serve as "the minimum requirements acceptable to the POEA for the employment of Filipino seafarers on board ocean-going ships."  Id. at 204.  Section 29 of those Standard Terms and Conditions reads as follows:

> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of voluntary arbitrators.  If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission...or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators.

Id. at 221.  Judge Gleeson granted the motion.

3

On appeal, Pagaduan argues that material factual issues remain in dispute on the threshold question of arbitrability under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. §§ 201-208, and that the district court erred in denying him a trial. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 519-20 (1974); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (existence of an agreement to arbitrate is a question for judicial determination). The Convention, which the parties agree applies here, prescribes four requirements for the enforcement of arbitration agreements: (1) there must be a written agreement; (2) that provides for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope. Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l., Inc., 198 F.3d 88, 92 (2d Cir. 1999). The only requirement disputed on appeal is the existence of the written agreement.

Pagaduan admits to having entered into a contract of employment with the entities Career Philippines Shipmanagement Ltd. and Columbia Shipmanagement, Inc. to work aboard the Queen Mary 2. He contends, however, that the signed Contract of Employment contains no arbitration

4

provision, that it does not incorporate the POEA Standard Terms and Conditions and that, in any event, Carnival as a non-party cannot enforce it.

Arbitration agreements are creatures of contract. Questions concerning the language or construction of an arbitration agreement "'must be addressed with a healthy regard for the federal policy favoring arbitration.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (quoting Moses H. Cone Memorial Hospital, 460 U.S. 1, 24-25 (1983)).

A contract may incorporate another document by reference by describing it in such clear and unambiguous terms that its identity can be ascertained beyond reasonable doubt. See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 47 (2d Cir. 1993); Glencore Ltd. v. Degussa Engineered Carbons L.P., 848 F. Supp. 2d 410, 428 n. 14 (S.D.N.Y. 2012); Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 395 (2d Cir. 2011). Maritime contracts frequently incorporate by reference other documents and industry terms and conditions. See, e.g., Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687, 688 (2d Cir. 1952). Incorporation by reference is a matter of law that can be resolved on summary judgment and does not require a trial to discard a contrary interpretation urged

5

by one party. Progressive Cas. Ins. Co., 991 F.2d at 47 & n.8 ("We also disagree with the district court's ruling that a trial is necessary to determine whether the Policy identified the FRA with sufficient specificity to incorporate it by reference into the Policy. The Policy specifically and directly identifies the FRA by name."); Roling v. E*Trade Sec. LLC, 860 F. Supp. 2d 1035, 1041 (N.D. Cal. 2012) (under New York law, provision "properly incorporated by reference" "as a matter of law").

Pagaduan's single-page Contract of Employment does not contain an arbitration provision on its face. It does, however, reference secondary documents that govern seafaring employment contracts and that do call for arbitration, e.g., the Memorandum Circular No. 10. The Contract clearly and unambiguously describes the documents whose terms would apply to Pagaduan's employment. See, e.g., JGA Constr. Corp. v. Burns Elec. Co., 145 A.D.2d 945, 946 (4th Dep't 1988); Bautista v. Star Cruises, 396 F.3d 1289, 1293 (11th Cir. 2005). The Contract of Employment incorporates the Standard Terms and Conditions and its arbitration provision by reference as a matter of law, foreclosing any material factual dispute.

Pagaduan quibbles with the language of the second paragraph of the Contract of Employment, arguing that it

6

simply states that the terms "herein" are in accordance with the POEA documents. The Eleventh Circuit, however, analyzed nearly identical language in a similar case and found the second paragraph incorporated by reference the POEA Standard Terms and Conditions. Bautista, 396 F.3d at 1293. We agree with the Eleventh Circuit's analysis, particularly in the context of the purpose of the POEA to supervise, regulate, and monitor overseas employment. See id.; Navarette v. Silversea Cruises Ltd., 620 F. App'x 793, 794-95 (11th Cir. Aug. 5, 2015) (per curiam).

Pagaduan contends that this Court would be compelled to make significant leaps in rational deduction to "connect the dots" between the Contract of Employment and Section 29 of the POEA Standard Terms and Conditions. But the connection is achieved by ordinary contract law principles. See Massena Towne Ctr. Assoc. v. Sear-Brown Grp., Inc., 255 A.D.2d 893, 895 (4th Dep't 1998) (incorporating by reference multiple layers of documents).

Pagaduan protests that he was unaware of the arbitration clause; that he was never told about it; and that he never consented to incorporation by reference of any additional terms. None of this rebuts the powerful presumption in favor of enforcing freely negotiated contracts, especially in the arbitration context.

*Progressive Cas. Ins. Co.*, 991 F.2d at 46 ("Under New York law, in the absence of fraud or other wrongful conduct, a party who signs a written contract, is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions."); *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920) ("Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract in the absence of fraud or other wrongful act on the part of another contracting party is conclusively presumed to know its contents and to assent to them."). The same rules apply to terms incorporated by reference. *See, e.g., Level Export Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 86 (1953); *4Connections LLC v. Optical Commc'ns Grp., Inc.*, 618 F. Supp. 2d 178, 183-84 (E.D.N.Y. 2009).

The parties debate a number of secondary issues, including whether Pagaduan separately signed the Amended Standard Terms and Conditions, the authenticity of that signature, and the timeliness of the document. However, Carnival does not need to prove that Pagaduan signed both the Contract of Employment and the documents incorporated by reference into that contract at the same time. Pagaduan signed a Contract of Employment that specifically referenced

8

a set of industry-wide standard terms and conditions, the minimum requirements for all seafaring employees. No fraud or overreaching is alleged. Section 29 of those terms mandates that Pagaduan pursue his claims via arbitration.[1] The District Court properly held that Pagaduan is bound by the terms of this contract, including the arbitration clause.

Since the word "Carnival" does not appear on his Contract of Employment, Pagaduan argues that Carnival cannot enforce the arbitration clause in the POEA Standard Terms and Conditions. This argument fails on numerous theories discussed below.

Pagaduan's complaint states that Carnival was his employer. See J. App'x at 30 (pleading he was "employed by the Defendants Carnival"). This alone permits Carnival to move to compel by estoppel under the contract. It would perpetrate an inequitable result to permit Padaguan to sue Carnival on claims arising out of its Contract of Employment, but resist arbitration with Carnival on terms

_____

[1]If Pagaduan is not party to a collective bargaining agreement, he has the option of selecting the National Labor Relations Commission dispute resolution process in lieu of arbitration. The Court notes that whether Pagaduan is party to a collective bargaining agreement or not has no bearing on the outcome of this appeal since he is compelled to arbitration regardless.

found in the same document. See, e.g., Barton Enterprises, Inc. v. Cardinal Health, Inc., No. 4:10 CV 324 DDN, 2010 WL 2132744, *4 (E.D. Mo. May 27, 2010) ("Because its claims against Cardinal Health depend on the interpretation of fee terms found in the license agreement, it would be unfair to allow Barton Enterprises to rely on these terms for its complaint, yet disavow the arbitration terms found in the very same license agreement.").

On appeal, Pagaduan seeks to distance himself from the Carnival entities, stating they are not his employer and are not parties to the contract. However, agency principles dictate that Carnival is a party capable of enforcing an arbitration agreement made by its agents. Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006); Arnold v. Arnold Corp.-Printed Commc'ns for Business, 920 F.2d 1269, 1282 (6th Cir. 1990). Carnival submitted two declarations that establish through business records that Columbia Shipmanagement Ltd. and Career Shipmanagement, Inc. act as manning agents on behalf of Carnival. See Major League Baseball Prop., Inc. v. Salvino, Inc., 542 F.3d 290, 312-13 (2d Cir. 2008) (accepting sworn declarations at the summary judgment stage to establish admissibility as business records). Moreover, Pagaduan's Contract of Employment does specify his charge as the Queen Mary 2, which suggests a

10

contractual relationship with the vessel and its owner, Carnival.  See Putnam v. Lower, 236 F.2d 561, 563 (9th Cir. 1956); Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 9 (1920).  Carnival is therefore a party capable of exercising rights under Pagaduan's Contract of Employment to work aboard its vessel.

For the foregoing reasons, and finding no merit in Pagaduan's other arguments, we hereby **AFFIRM** the judgment of the District Court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK
